IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHAMSA ALSHIBLI<br><br>                   Plaintiff,<br><br>v.<br><br>CITY OF MESQUITE; JOHN DOE 1 in his individual capacity; JOHN DOE 2 in his individual capacity; JOHN DOE 3 in his individual capacity; JOHN DOE 4 in his individual capacity; JOHN DOE 5 in his individual capacity;  JANE DOE 1 in her individual capacity; and JANE DOE 2 in her individual capacity.<br><br>                   Defendant. | Civil Action No. 3:24-cv-02000 |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, by and through her counsel, pursuant to Fed. R. Civ. P. 15(a)(1)(B) filing this first amended complaint as a matter of course within 21 days of Defendants' 12(b)(6) pleading.

Shamsa Alshibli files this civil action seeking redress for violations of her constitutional and statutory rights. Plaintiff's rights to free exercise of her religion, found in the United States and Texas constitutions, as well as federal and state statutes, were violated when her religiously-mandated hair covering was unlawfully removed for the entire period she was detained at the City of Mesquite jail, including for booking photographs, and when she was videoed with her hair and torso almost completely exposed.

### PARTIES

1.      Plaintiff Shamsa Alshibli resides in Dallas County, Texas.

2. Defendant City of Mesquite can be served with process by serving the City Secretary at 777 N. Galloway Avenue, Mesquite, Texas 75149.

3. Defendant John Doe 1 is a City of Mesquite correctional officer who can be served with process by serving citation on Chief of Police David Gill at 777 N. Galloway Avenue, Mesquite, Texas 75149.

4. Defendant John Doe 2 is a City of Mesquite correctional officer who can be served with process by serving citation on Chief of Police David Gill at 777 N. Galloway Avenue, Mesquite, Texas 75149.

5. Defendant John Doe 3 is a City of Mesquite correctional officer who can be served with process by serving citation on Chief of Police David Gill at 777 N. Galloway Avenue, Mesquite, Texas 75149.

6. Defendant John Doe 4 is a City of Mesquite correctional officer who can be served with process by serving citation on Chief of Police David Gill at 777 N. Galloway Avenue, Mesquite, Texas 75149.

7. Defendant John Doe 5 is a City of Mesquite correctional officer who can be served with process by serving citation on Chief of Police David Gill at 777 N. Galloway Avenue, Mesquite, Texas 75149.

8. Defendant Jane Doe 1 is a City of Mesquite correctional officer who can be served with process by serving citation on Chief of Police David Gill at 777 N. Galloway Avenue, Mesquite, Texas 75149.

9. Defendant Jane Doe 2 is a City of Mesquite correctional officer who can be served with process by serving citation on Chief of Police David Gill at 777 N. Galloway Avenue, Mesquite, Texas 75149.

10. Plaintiff alleges that Defendants were responsible for the events and happenings set forth herein, proximately caused injury and damages to Plaintiff, and are jointly and severally liable for Plaintiff's damages.

11. The Mesquite Police Department acted within the scope of its authority as an agent, servant, or employee of the City of Mesquite.

12. Defendant John Doe 1 acted within the scope of his authority as a correctional officer for the Mesquite Police Department, an instrument of the City of Mesquite.

13. Defendant John Doe 2 acted within the scope of his authority as a correctional officer for the Mesquite Police Department, an instrument of the City of Mesquite.

14. Defendant John Doe 3 acted within the scope of his authority as a correctional officer for the Mesquite Police Department, an instrument of the City of Mesquite.

15. Defendant John Doe 4 acted within the scope of his authority as a correctional officer for the Mesquite Police Department, an instrument of the City of Mesquite.

16. Defendant John Doe 5 acted within the scope of his authority as a correctional officer for the Mesquite Police Department, an instrument of the City of Mesquite.

17. Defendant Jane Doe 1 acted within the scope of her authority as a correctional officer for the Mesquite Police Department, an instrument of the City of Mesquite.

18. Defendant Jane Doe 2 acted within the scope of her authority as a correctional officer for the Mesquite Police Department, an instrument of the City of Mesquite.

19. Correctional officers at the City of Mesquite jail acted within the scope of their authority as an agent, servant, or employee of Defendant City of Mesquite. Each Defendant is a governmental entity or employee which engaged in and ratified the tortious and unlawful actions by individual employees of the City of Mesquite and City of Mesquite jail, as described herein.

## JURY DEMAND

20.     Plaintiff demands a trial by jury.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331, as the conduct alleged, and corresponding remedies fall under 42 U.S.C. § 1983 and other federal statutes. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. §1367.

22.     The acts complained of occurred in the Northern District of Texas and venue is lodged in this Court pursuant to 28 U.S.C. §1391 because all acts and/or omissions giving rise to the claims alleged herein occurred in this District.

## STATEMENT OF FACTS

*Preliminary Statement:*

23.     This case challenges the City of Mesquite, vis-à-vis, Mesquite Police Department's policies, practices, and customs which directly violate the First Amendment as well as other federal and state law. Pursuant to said policies, practices, and customs, City of Mesquite correctional officers forced Plaintiff to remove her religiously mandated hair covering (hereinafter "hijab") upon entering the City of Mesquite jail, withheld her hijab the entire time she was in custody, and videotaped her while she did not have a shirt or hijab on, despite Ms. Alshibli's constant and vociferous objections that the removal of her hijab directly violated her sincerely held beliefs and obligations as a Muslim woman.

24.     This practice alienates faith communities throughout the City of Mesquite, including but not limited to, Muslim women wearing hijab, Jews wearing kippahs, Sikhs wearing turbans, and Catholic nuns covering their hair. The policy humiliates individuals booked into the

City of Mesquite Jail and places substantial burdens on individuals and Plaintiff's religious liberties.

25. Plaintiff provides in the Factual Allegations section below the general substance of her factual allegations. Plaintiff does not intend that those sections provide comprehensively, in detail, or even in chronological order, any or all allegations. Instead, Plaintiff presents these sections to provide Defendants sufficient and fair notice as to the general nature and substance of Plaintiff's allegations, and to further demonstrate that Plaintiff's claims have facial plausibility.

26. When Plaintiff pleads factual allegations "upon information and belief," Plaintiff is pleading that the specified factual contentions either have, or will likely have, evidentiary support after a reasonable opportunity to conduct further investigation and/or discovery.

27. To the extent that Plaintiff quotes a conversation, she has done so to the best of her recollection and knowledge. Although Plaintiff attempts to sufficiently identify all Defendants, several of their names are currently unknown, and those individuals are listed as John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, Jane Doe 1, and Jane Doe 2.

28. Plaintiff pleads specific facts which give rise to the legal claims and redress delineated herein. Plaintiff is not pleading her "best case," as she is incapable of doing so until afforded an opportunity to conduct discovery. Plaintiff will seek leave to amend this pleading as further facts are developed, or if the Court determines Plaintiff's pleading is in any manner deficient.

***Factual Allegations*:**

29. Shamsa Alshibli is a devout Muslim woman who observes the mandatory religious practice of covering her hair with a hijab. She has been wearing hijab for approximately twelve years and believes it to be a central tenant of her faith and identity as a Muslim woman.

30. On March 31, 2024, Ms. Alshibli was apprehended by law enforcement for a minor traffic infraction. During this time, both Ms. Alshibli and the officer who made the traffic stop, learned that there was an original at-large warrant issued in January of 2023 related to a Class B misdemeanor, alleged to have occurred in February of 2022. The officer then executed the warrant and arrested Ms. Alshibli.

31. After her arrest, Ms. Alshibli was transported to the City of Mesquite jail. Upon arrival and entry, Ms. Alshilbli was seated in a common area and John Doe 1, a white male correctional officer, conducted an intake to attain biographical and medical data. After concluding the intake, John Doe 1 informed Ms. Alshibli that another officer would bring her the inmate uniform to change into and he left.

32. Three male correctional officers - John Doe 2, a black male, John Doe 3, a black male, and John Doe 4, a white male - were in the immediate vicinity of where Ms. Alshibli was seated, such that she was able to directly communicate with them, both individually and in a group, in conversation.

33. Jane Doe 1, a black female correctional officer, joined the group in this common area and delivered the inmate uniform to Ms. Alshibli, instructing her to change.

34. Upon noticing the inmate uniform was short-sleeved, Ms. Alshibli informed Jane Doe 1, John Doe 2, John Doe 3, and John Doe 4 that she needed an additional garment to cover her arms because of her religious requirements. Jane Doe 1 said that the City of Mesquite did not provide such accommodations, and that Ms. Alshibli would be required to change into the uniform as provided. The male officers confirmed this policy by nodding in agreement.

35. Ms. Alshibli then went to a private area to change into the inmate uniform. She changed only her clothing, but kept her jewelry, hijab, and socks on and then re-entered the common area.

36. When Ms. Alshibli came out, the four correctional officers collectively addressed her, directing her to remove her jewelry and her socks. Ms. Alshibli complied, immediately and without objection.

37. Then, the officers told her she also was required by jail policy to remove her hijab.

38. At this point, Ms. Alshibli mounted a clear and unequivocal religious objection, stating specifically that she wore hijab as a religious obligation and was not permitted to remove it in the presence of males to whom she was not related through consanguinity or marriage.

39. John Doe 2 refused the request, explaining that arrestees who came to the jail wearing cross necklaces were required by jail policy to remove them. He stated that these two situations were parallel.

40. Ms. Alshibli replied that this analogy was a false equivocation, informing him and the other three correctional officers who were part of the conversation, that wearing a cross was not a religious requirement, but an expression of faith or perhaps even a fashion statement. Wearing a hijab, in contradistinction, was not an optional expression, rather a mandatory religious obligation.

41. Ultimately, when the four correctional officers collectively refused to provide the necessary religious accommodation, invoking City of Mesquite's booking policy and procedures, Ms. Alshibli remained steadfast in her refusal and demanded to speak to their supervisor.

42. At this point, John Doe 1 returned to speak to Ms. Alshibli. Because John Doe 1 was the individual summoned to address Ms. Alshibli when a supervisor was requested, Ms. Alshibli believes he is a supervisor at the City of Mesquite jail.

43. Once again, Ms. Alshibli reiterated to John Doe 1, in no uncertain terms, that she could not remove her hijab due to her sincerely held religious beliefs and obligations.

44. John Doe 1 denied Ms. Alshibli's request for religious accommodation, stating that the removal of hijab was part and parcel of their jail policy and without exception, required Ms. Alshibli's complete compliance. He said, "In jail, there is no religion or whatever. This is our rule, and you have to take it off."

45. John Doe 1 then told Ms. Alshibli, "If you don't take it off, we are going to take it off ourselves for you."

46. Ms. Alshibli became extremely distraught, not knowing what else to do or how to access additional recourse. Under coercion and distress, she removed her hijab.

47. Then, Ms. Alshibli was redirected to the private space where she had changed her clothes, to remove her brassiere, per policy and custom. Jane Doe 1 elaborated that the underwires beneath each cup posed a safety and security hazard. Ms. Alshibli stated that she did not want to remove her brassiere, but was willing to remove the underwires to comply with the jail policy. Jane Doe 1 accommodated this alternative. One underwire came out with minimal effort, but the other was stuck and required scissors to excise it.

48. Jane Doe 1 left momentarily and then returned to the private area with scissors to facilitate the removal. John Doe 2 accompanied her. He used, upon information and belief, a body worn camera, but held it by hand and recorded Ms. Alshilbi, without consent and without her shirt on or hair covered, as she used the scissors to remove the underwire.

49. Ms. Alshibli was then photographed for her booking photo in accordance with the City of Mesquite's policy, without her hijab, by Jane Doe 2, a white female, in violation of her sincerely held religious beliefs.

50. Throughout her entire pre-arraignment detention, Ms. Alshibli was denied the ability to cover her hair. The City of Mesquite jail also failed to provide an alternative garment or cloth to accommodate her religious beliefs.

51. Upon information and belief, the City of Mesquite jail has retained the photograph and video made of Ms. Alshibli without her hijab, viewable to its employees, regardless of gender, in violation of Ms. Alshibli's sincerely held religious beliefs.

52. After Ms. Alshibli's bond was posted and her release paperwork processed, her clothing was returned so she could change from the inmate uniform back to her personal clothing. However, her hijab was not returned alongside her other clothing.

53. Instead, her hijab was placed in a separate property bag, and she was informed by correctional officers that she was not permitted to open the bag until she exited the City of Mesquite jail.

54. Ms. Alshibli protested, informing them that correctional officers had wrongly placed part of her clothing – her hijab -- inside the property bag. She stated that she needed to open the bag to retrieve it, as she was under a religious obligation to cover her hair.

55. John Doe 5, a white male correctional officer, acknowledged that he understood Ms. Alshibli's request but refused based on their policy, stating, "Okay, but you're still not allowed to open the bags here."

56. Ms. Alshibli continues to feel deeply traumatized, dehumanized, and exposed as well as psychologically distraught as a result of her forced hijab removal, the photograph taken of

her without hijab, the publication of said photograph, and the video of her without a shirt on, fully exposed. She suffers changes in appetite, anxiety, paranoia, and trauma from the incident.

57. At least seven City of Mesquite correctional officers, operating at times separately and at other times in concert, expressed that requiring Ms. Alshibli to remove her hijab was not a haphazard decision, but based on explicit jail policy. The ubiquitous nature of this directive illustrates this was not a rogue actor, but a widely understood and implemented policy and procedure.

58. A Notice of Suit was served on the City of Mesquite on June 6, 2024.

59. It is Plaintiff's intent to show that all facts asserted in this pleading relate to policies, practices, and customs, or alternatively failure to train, of the City of Mesquite to support the liability claims contained herein. These policies, practices, customs, and omissions alleged in this pleading, individually or working together, and whether supporting episodic acts and omissions, were the direct and proximate causes of the constitutional violations to which Ms. Alshibli was subjected.

60. Defendants knew, or should have known, when they were booking Ms. Alshibli into the City of Mesquite jail, that their policies, practices, and customs were such that they would not meet constitutional obligations to protect and preserve her free expression of religion.

61. The Fifth Circuit Court of Appeals has made it abundantly clear that Plaintiff need not allege the identity of chief policymaker(s) at the pleading stage, but need only to plead enough factual matter to permit a reasonable inference of involvement by the relevant policymakers. At this stage of litigation, Plaintiff does not have access to, or personal knowledge of, the specific details regarding the existence or absence of Defendants' internal policies and/or training

procedures. Plaintiff's burden is to merely place Defendants on fair notice of the grounds for which they are being sued.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### The Religious Land Use and Institutionalized Persons Act
### (42 U.S.C. § 2000cc)

62. Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

63. The Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA") provides, in relevant part, the following: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

64. At all relevant times, Defendants met and continue to meet the definition of the term "government" under RLUIPA. *See* 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

65. At all relevant times, the locations where the City of Mesquite detains and photographs arrestees (including, but not limited to, the City of Mesquite jail, Mesquite, Texas where the events detailed above transpired) are federally funded "institutions" as defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

66. At all relevant times, Plaintiff was "confined to institutions" as defined under RLUIPA when the events alleged above transpired.

67. Defendants' acts or omissions, policies, and customs substantially burdened Plaintiff's religious exercise by requiring her to remove her hijab during the entire time she was confined, by photographing her without hijab, and videotaping her without her hijab or a shirt covering her torso.

68. Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

69. Defendants' acts or omissions, policies, and customs are not the least restrictive means of furthering a compelling government interest.

70. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

**SECOND CAUSE OF ACTION**
**Free Exercise Clause**
**(42 U.S.C. § 1983)**

71. Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

72. 42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

73. At all relevant times, Defendants acted under color of state law.

74. Under the First Amendment of the Constitution of the United States of America, Plaintiff has the right to freely exercise her religion.

75. By forcing Plaintiff to remove her hijab for post-arrest confinement and photographs, videotaping Plaintiff without her hijab or shirt on, and retaining said video, Defendants deprived Plaintiff of her right to freely exercise her religion in contravention of the

First Amendment's Free Exercise Clause as incorporated and applied to the states by way of the Fourteenth Amendment of the Constitution of the United States.

76. At all times relevant hereto, Defendants acted pursuant to a policy or custom which denies inmates Free Exercise of Religion.

77. Defendant City of Mesquite, vis-à-vis, the City of Mesquite jail, failed to adopt clear policies and failed to properly train its deputies as to booking, photographing, and videotaping of those who observe the religious practice of covering their hair – including, but not limited to Muslim women wearing hijab, Jews who wear kippahs, Catholic nuns who observe covering their hair, and Sikhs who wear turbans.

78. Defendant City of Mesquite's policies or customs, and/or its failure to adopt clear policies and failure to properly train its deputies, were a direct and proximate cause of the constitutional deprivation suffered by Plaintiff.

79. Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

### THIRD CAUSE OF ACTION
### Freedom of Worship (Tex. Const. art I, §6)

80. Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

81. Texas Constitution Article I, section 6 states, "No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion."

82. By forcing Plaintiff to remove her hijab for post-arrest confinement, photographing, videotaping her without a hijab or shirt, and retaining said photograph and video, Defendants interfered with her right to cover her hair and body as her religion mandates. The forced removal of her hijab and exposure of her shirtless torso burdened her free exercise of religion.

83. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## FOURTH CAUSE OF ACTION
### Texas Religious Freedom and Restoration Act
**(Tex. Civ. Prac. & Rem. Code Sec. 110.003)**

84. Under the Texas Religious Freedom and Restoration Act, "A government agency may not substantially burden a person's free exercise of religion."

85. By forcing Plaintiff to remove her hijab for post-arrest confinement, photographs, and videotaping, Defendants interfered with her right to wear a hijab and cover her hair and body as her religion mandates. The forced removal of her hijab and exposure of her shirtless torso burdened her free exercise of religion.

86. The continued retention of the offending video and photograph, as well as its submission to the AIS database, constitutes an ongoing, continuous burden to Plaintiff's free exercise rights.

87. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## FIFTH CAUSE OF ACTION
### Declaratory Judgment
**(Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-02)**

88. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

89. Defendants' conduct was intentional and/or made with reckless indifference to Plaintiff's religious rights.

90. Plaintiff's right to freely exercise her religion was infringed upon and substantially burdened by Defendants' conduct.

91. Defendants' policy and custom of forcing the removal of religious head coverings for post-arrest confinement, photographs, and videotaping, including Plaintiff's hijab, is an unlawful and unconstitutional practice that infringes upon Plaintiff's rights to freely exercise her religion without the interference of substantially burdensome government conduct.

92. Defendants' policy, practice, and custom caused and continues to cause harm to Plaintiff as Defendants still possess and maintain photographs of Plaintiff without a hijab and a video of Plaintiff without both a hijab and a shirt covering her torso.

93. Plaintiff is entitled to a declaratory judgment that Defendants infringed upon and substantially burdened her religious free exercise and continues to substantially burden her religious free exercise in violation of federal and state law and the United States Constitution.

94. Plaintiff has a strong likelihood of succeeding on the merits of her claims.

## ATTORNEYS' FEES

95. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

96. Declares Defendants' discriminatory practices violate the RLUIPA, 42 U.S.C. § 2000cc *et seq*., the Free Exercise Clause of the First Amendment to the United States Constitution, the Freedom of Worship Clause of the Texas Constitution, and the Texas Religious Freedom and Restoration Act;

97. Enjoins Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with Defendants, from requiring the removal of any religious head or hair coverings while an arrestee or detainee is in the City of Mesquite's custody;

98. Require Defendants to remove, delete, and permanently destroy any photographs or videos from all databases offending Plaintiff's rights to wear hijab and cover her torso;

99. Require Defendants to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future;

100. Award compensatory relief to Plaintiff as a direct and proximate result of the occurrence which is the basis of this lawsuit, compensating Plaintiff for her emotional distress, torment, mental anguish, physical pain and suffering, and any economic damages she was forced to endure due to Defendants' policies and conduct;

101. Award compensatory and punitive damages against all Defendants in their individual capacities for the above violations of law;

102. A jury trial on all appropriate issues;

103. Award the Plaintiff's attorneys' fees and costs under 42 U.S.C. § 1988 and state law;

104. Grant such further relief as the Court deems just, equitable, and proper.

By: */s/ Huma T. Yasin*
Huma T. Yasin, Esq.
Texas Bar No. 24115971
**SPANGLER LAW PLLC**
400 North Saint Paul St., Suite 750
Dallas, TX 75201
P: 214-932-3030 | F: 214-346-5909
E: hyasin@spanglerlaw.com

/s/ David Burns
David Burns, Esq.
Texas Bar No. 24126298
**SPANGLER LAW PLLC**
400 North Saint Paul St., Suite 750
Dallas, TX 75201
P: 214-932-3030 | F: 214-346-5909
E: dburns@spanglerlaw.com

/s/ James A. Spangler, Jr.
James A. Spangler, Jr., Esq.
Texas Bar No. 24106454
**SPANGLER LAW PLLC**
400 N. Saint Paul St., Suite 750
Dallas, TX 75201
P: 214-932-3030 | F: 972-275-9967
E: jim@spanglerlaw.com


/s/Marwa Elbially
Marwa Elbially, Esq.
Texas Bar No. 24090089
**ELBIALLY LAW OFFICE, PLLC**
704 East 15th Street, Suite 204
Plano, TX 75074
T: 972.423.7330
E: info@elbiallylaw.com


PLAINTIFFS' ATTORNEYS