IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAMSA ALSHIBLI, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:24-cv-2000-L-BN |
| CITY OF MESQUITE, ET AL., | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

In response to a motion to dismiss her original complaint, Plaintiff Shamsa Alshibli filed a timely amended complaint as a matter of course (seeking declaratory and injunctive relief and monetary damages) against the City of Mesquite and multiple John Doe defendants, identified as correctional officers, in which she alleges that the defendants' forcing her to remove her hijab while she was in custody at the City's jail violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000bb *et seq.*; the First Amendment to the United States Constitution; the Texas Constitution; and the Texas Religious Freedom and Restoration Act, TEX. CIV. PRAC. & REM. CODE § 110.003. *See* Dkt. No. 7; FED. R. CIV. P. 15(a)(1)(B); *see also, e.g.*, Dkt. No. 7, ¶ 23 ("This case challenges the City of Mesquite, vis-à-vis, Mesquite Police Department's policies, practices, and customs which directly violate the First Amendment as well as other federal and state law. Pursuant to said policies, practices, and customs, City of Mesquite correctional officers forced Plaintiff to remove her religiously mandated hair covering (hereinafter

'hijab') upon entering the City of Mesquite jail, withheld her hijab the entire time she was in custody, and videotaped her while she did not have a shirt or hijab on, despite Ms. Alshibli's constant and vociferous objections that the removal of her hijab directly violated her sincerely held beliefs and obligations as a Muslim woman.").

The City moved to dismiss the complaint in part. *See* Dkt. No. 9. Alshibli responded. *See* Dkt. No. 11. And the City replied. *See* Dkt. No. 12.

United States District Judge Sam A. Lindsay then referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 13.

For the reasons and to the extent set out below, the undersigned recommends that the Court grant the partial motion to dismiss the complaint in part and deny it in part.

**Legal Standards**

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions, and, so, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels;

threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

## Analysis

Considering its reply brief, which narrowed the relief that the City seeks, it moves to dismiss (1) Alshibli's First Amendment claim, asserted against it under 42 U.S.C. § 1983; (2) her request for monetary damages under the Texas Constitution; and (3) her request for prospective equitable relief relating just to the removal of her hijab (but not any evidence of that in the City's custody). *See* Dkt. No. 12.

I.  The Court should dismiss with prejudice Alshibli's Section 1983 claim against the City.

"Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) ("*Sanchez II*") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

And the general pleading standards set out above apply to such a claim against a municipality. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual

allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

But, because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell*, 436 U.S. at 690), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez II*, 956 F.3d at 791 (citing *Monell*, 436 U.S. at 694); *see also Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *3 (5th Cir. June 26, 2024) (per curiam) ("A municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting *Monell*, 436 U.S. at 694)).

> To plausibly allege that a policy was the moving force,
>
> a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

These elements are "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

And, where a plaintiff's claim fails as to one prong, a court "need not consider whether [her] claim also fails the other two *Monell* prongs." *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 & n.11 (5th Cir. 2021) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted).

And, in rare circumstances, "a single decision by a policymaker may … constitute a policy for which a municipality may be liable," where (1) the "decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Englewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (cleaned up); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) ("[A]n official policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (cleaned up)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (citation omitted).

A plaintiff must then "allege 'moving force' causation by showing first, 'that the

municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted).

As to the causation required, "[t]his connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (footnote omitted). That is because the "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013) (per curiam).

"[T]he failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (citation omitted). And, although "a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted).

And, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain

specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and footnote omitted).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997))).

As to the existence of a policy underlying the correctional officers' requiring Alshibli to remove her hijab, the allegations in the amended complaint provide that Alshibli was told by multiple officers that she "was required by jail policy to remove her hijab." *E.g.*, Dkt. No. 7, ¶ 37; *see also id.*, ¶¶ 38 & 39 ("At this point, Ms. Alshibli mounted a clear and unequivocal religious objection, stating specifically that she wore hijab as a religious obligation and was not permitted to remove it in the presence of males to whom she was not related through consanguinity or marriage. John Doe 2 refused the request, explaining that arrestees who came to the jail wearing cross necklaces were required by jail policy to remove them. He stated that these two situations were parallel.").

And Alshibli alleges that an officer who she believed to be a supervisor confirmed "that the removal of hijab was part and parcel of their jail policy and without exception, required Ms. Alshibli's complete compliance." *Id.*, ¶¶ 42-44.

Responding to the motion to dismiss, Alshibli also asserts that

> [t]he policy or custom requiring the removal of religious headwear was so persistent and widespread, that every single one of the seven (7) City of Mesquite employees with whom Ms. Alshibli came into contact, refused her religious accommodations stating identical rationale – this was the jail's policy, without exception. These refusals to accommodate occurred at different times, at varied locations within the jail, and by different employees. Put simply, these blatant violations of constitutional rights were not a singular incident by an officer gone rogue, but a result of a well-defined, recognized, and widely implemented policy.

Dkt. No. 11 at 10 ("It is extremely unlikely that all seven officers spontaneously and independently invented the same policy, and then applied it to Ms. Alshibli. The uniformly consistent manner in which every officer – including the supervisor – asserted this policy rationally implies that this is a formal department policy. Discovery will likely yield a specific written policy in the Mesquite Police Department.").

And Alshibli argues that the facts she has alleged allow for a reasonable inference "that the statutorily authorized policymaker promulgated an unconstitutional policy," citing *Groden v. City of Dallas, Tex.*, 826 F.3d 280 (5th Cir. 2016), where it was held that an allegation that an official spokesperson for the municipality announced the alleged policy allowed for that inference:

> Ms. Alshibli has identified seven (7) different City of Mesquite employees who, in four different instances, individually and at separate times, asserted that Mesquite's official policy is to allow no reasonable accommodation for religious garb. In *Groden*, one city official announcing the city's policy allowed a reasonable inference that the policy maker authorized that policy. Undoubtedly, this indicates that when seven city officers announce and implement the city's official policy, there is a reasonable inference that the relevant city policymaker authorized that policy.

Dkt. No. 11 at 10-11.

As set out above, an official policy "usually exists in the form of written policy statements, ordinances, or regulations." *James*, 577 F.3d at 617. But "[a]n official, written policy is 'itself' unconstitutional only if it affirmatively allows or compels unconstitutional conduct." *Edwards v. Balch Springs, Tex.*, 70 F.4th 302, 309 (5th Cir. 2023) (footnote omitted). And, so, "where such an official, written policy merely commits some decisions to an individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then that policy satisfies *Monell*'s moving-force element only if those features stem from the policymaker's deliberate indifference." *Id.*

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.

"Establishing deliberate indifference generally requires a 'pattern of similar violations' arising from a policy 'so clearly inadequate as to be obviously likely to result in a constitutional violation.'" *Convington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (cleaned up; quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003)).

Similarly, "[a] city cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Peña*, 879 F.3d at 623 (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)); *see also Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023)

("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But, w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

"To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo*, 2015 WL 5021393, at *5 (quoting *Piotrowski*, 237 F.3d at 582).

A pattern requires "sufficiently numerous incidents," as opposed to "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (cleaned up).

Which is why allegations "limited to the events surrounding the plaintiff" – the scope of the allegations that Alshibli has pleaded – cannot constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, as such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

> [Instead, a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. That knowledge, coupled with a failure to act, can show the existence of a municipal policy.

*Robinson*, 80 F.4th at 710 (cleaned up).

And, so, the Section 1983 claim against the City should be dismissed for this reason alone. *See Brown*, 985 F.3d at 497 & n.11; *Zarnow*, 614 F.3d at 168-69.

But Alshibli's *Monell* claim also fails as to the policymaker prong.

A complaint need "not specifically identify [the municipality's] policymaker," *Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017), because that identity "is a question of state law," and "courts should not grant motions to dismiss § 1983 cases 'for imperfect statement of the legal theory,'" *Groden*, 826 F.3d at 284-85 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988), then quoting *Johnson*, 574 U.S. at 11).

But, to plausibly allege the policymaker prong of *Monell* liability, a complaint must still contain factual content to allow the Court to reasonably infer "that the challenged policy was promulgated or ratified by the city's policymaker." *Id.* at 285; *see also Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

Allegations that all correctional officers at the jail, including an alleged supervisor, characterized the requirement that Alshibli remove her hijab as an official policy does allow for a reasonable inference that the City's policymaker promulgated that requirement or delegated its authority to make that requirement

an official policy.

In this respect, "[t]here is a fundamental difference between decision makers and policymakers," such that "'[d]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function.'" *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246 (5th Cir. 2021) (per curiam) (quoting *Bolton v. City of Dall.*, 541 F.3d 545, 548-49 (5th Cir. 2008)); *see, e.g.*, *Sweetin v. City of Tex. City, Tex.*, 48 F.4th 387, 393 (5th Cir. 2022) ("[T]he fact that Wylie is 'responsible for the everyday operations of the EMS Department' is immaterial because such a responsibility only indicates decision-making authority rather than policymaking authority." (collecting cases)).

Instead, "[a] true policymaker must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 217 (5th Cir. 2019) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). And, so, "[a] 'policymaker' must be one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (quoting *Bennett*, 728 F.2d at 769).

Considering that "[a] municipal employee may also possess final policymaking authority where the final policymaker has delegated that authority, either expressly or impliedly," *Webb*, 925 F.3d at 215 (citing *Zarnow*, 614 F.3d at 167), where a plaintiff relies on an employee to allege the liability of the employing municipality, the complaint must at least include facts from which the Court may infer that final policymaking authority has been so delegated.

> As illustrated in a pre-*Groden* decision from this district, in a suit against the City of Dallas, sufficient factual allegations connecting an allegedly unconstitutional policy to the City's actual policymaker, its City Council, can insulate a complaint from dismissal under Rule 12(b)(6) even if municipal liability is based on actions by the City's police chief. *See Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 950-52 (N.D. Tex. 2014). In *Flanagan*, the plaintiffs alleged "in their amended complaint ... that Dallas City Councilman Dwaine Caraway recently confirmed that the City Council had delegated policy-making authority for police officer training to Chief Brown." *Id.* at 951. … Here, Hughes's amended complaint lacks similar factual allegations to show that it is plausible that Chief Brown was a final policymaker, notably under a theory that he was acting under policymaking – not decisionmaking – authority delegated to him.

*Hughes v. City of Dall., Tex.*, No. 3:18-cv-1770-B, 2020 WL 4670659, at *4 (N.D. Tex. Aug. 11, 2020).

And, because Alshibli fails to plausibly allege the first two prongs of *Monell*, the Court need not take up the third – moving-force causation – prong. *Cf. Brown*, 985 F.3d at 497 & n.11; *Zarnow*, 614 F.3d at 168-69.

II. The Court should dismiss with prejudice Alshibli's request for monetary damages under the Texas Constitution.

While the City initially moved to dismiss Alshibli's requests for monetary damages pursuant to RLUIPA and the Texas Constitution, *see, e.g.*, Dkt. No. 9 at 16, it limited this request on reply to just the Texas Constitution, *see* Dkt. No. 12 at 1; *see also* Dkt. No. 11 at 13-14 (citing *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 290 (5th Cir. 2012) ("Under Supreme Court precedent, money damages are available against municipal entities unless Congress has given clear direction that it intends to exclude a damages remedy from a cognizable cause of action. RLUIPA contains no indication, much less clear direction, that it intends to exclude a money damages remedy. Thus, municipalities and counties may be held

liable for money damages under RLUIPA, but states may not." (citations omitted))).

But the City remains correct that Alshibli may not seek monetary damages based on an alleged violation of the Texas Constitution, because

> Texas does not have an implied private right of action for damages for violation of constitutional rights. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147-48 (Tex. 1995). That is, Texas does not have a § 1983 equivalent. *Allison v. City of Fort Worth*, 60 F. Supp. 2d 589, 596 (N.D. Tex. 1999).

*Freeland v. Tarrant Cnty., Tex.*, No. 4:18-cv-845-A, 2019 WL 339452, at *5 (N.D. Tex. Jan. 28, 2019); *see also McLean v. Meeks*, No. 3:15-cv-3037-C, 2015 WL 13851039, at *2 (N.D. Tex. Nov. 5, 2015) ("[T]here is no cognizable state law cause of action for damages for the alleged violation of rights secured under the Texas Constitution because there is no enabling statute under Texas law equivalent to § 1983 allowing a private right of action for damages against governmental entities for violations of the Texas Constitution." (citing *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007) (citing *Bouillion*); *Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir. 1993))).

III.   The Court should dismiss as moot Alshibli's request for prospective equitable relief relating to the removal of her hijab (but not photographs and videos of <u>her possessed by the City).</u>

Included in the prayer of the amended complaint is a request that the Court "[e]njoin[] Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with Defendants, from requiring the removal of any religious head or hair coverings while an arrestee or detainee is in the City of Mesquite's custody." Dkt. No. 7, ¶ 97.

The City moves the Court to dismiss this request as moot based on Alshibli's "release from the Mesquite Jail." Dkt. No. 9 at 15.

And Alshibli appears to oppose this specific request by arguing that, "as a resident of Dallas County, [she] is at risk of future arrest and has no immunity from criminal charges in the future." Dkt. No. 11 at 14.

But the City is correct, *see* Dkt. No. 12 at 6, that Alshibli's release from custody does moot this request as to the removal of the hijab – but not to the extent that she seeks "prospective equitable relief regarding photographs and videos of her possessed by" the City, *id.* at 5, as the City clarifies – and her argument as to the risk of a future arrest is too speculative to prevent this finding of mootness, *see, e.g., Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (per curiam) ("By the time Coleman filed his original complaint, he had been transferred from the Lincoln Parish Detention Center ... to the Jefferson Parish Detention Center. That transfer mooted his claims for declaratory and injunctive relief under [RLUIPA] ..., and the possibility of his transfer back to the LPDC is too speculative to warrant relief." (citing *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001))); *cf., e.g., Galey v. Biden*, No. 2:22-CV-06203, 2025 WL 338309, at *4 n.3 (W.D. La. Jan. 29, 2025) ("Ordinarily, dismissals for [ ] mootness … must be without prejudice." (citing, as applicable, *Wilderness Soc'y v. Salazar*, 603 F. Supp. 2d 52, 72 (D.D.C. 2009) (citing *Payne v. Panama Canal Co.*, 607 F.2d 155, 158 (5th Cir. 1979))))).

## Recommendation

The Court should grant in part and deny in part Defendant City of Mesquite's partial motion to dismiss the amended complaint [Dkt. No. 9] and (1) dismiss with

prejudice Plaintiff Shamsa Alshibli's 42 U.S.C. § 1983 claim against the City; (2) dismiss with prejudice her request for monetary damages under the Texas Constitution; and (2) dismiss as moot her request for prospective equitable relief relating to the removal of her hijab (but not photographs and videos of her possessed by the City).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 9, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE